UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
CSC HOLDINGS, INC.,,

                    Plaintiff,

– against –

MARC MARTIN,
                    Defendant.
-------------------------------------------------------X

**MEMORANDUM & ORDER**
05-CV-0384 (NGG) (JO)

NOT FOR PUBLICATION

GARAUFIS, United States District Judge.

On February 22, 2006, Magistrate Judge James Orenstein issued a Report and Recommendation ("R&R") on the amount of damages to be awarded to plaintiff CSC Holdings, Inc. ("Cablevision") following entry of default judgment against Defendant Marc Martin ("Martin") for alleged violations of the Federal Communications Act of 1934, as amended, 47 U.S.C. §§ 553(a)(1) and 605(a) ("FCA"). Familiarity with the R&R and with the facts underlying the plaintiff's lawsuit, which are set forth in the R&R, is presumed.

In his R&R, Judge Orenstein recommended that this court enter judgment in favor of Cablevision in the amount of $1,517.00. This figure represented $1,000.00 in statutory damages under the FCA; $228.00 in attorneys' fees; and $289.00 in costs. Cablevision timely filed objections to Judge Orenstein's R&R, and this court is therefore required to make a de novo review of all portions of the R&R to which Cablevision specifically objected. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

After conducting de novo review, for the reasons set forth below, this court adopts in part and rejects in part Magistrate Judge Orenstein's R&R. The R&R is modified to the extent that Cablevision is hereby awarded $2,400.00 in statutory damages and $817.00 in reasonable attorneys' fees and costs.

I.   **Legal Standards**

   A.   **Default Judgment**

A default constitutes an admission of all well-pleaded factual allegations in the complaint, with the exception of those relating to damages. Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). "Only in very narrow, exceptional circumstances may a court find an allegation not well pleaded." In re Crazy Eddie Secs. Litig., 948 F.Supp. 1154, 1160 (E.D.N.Y.1996) (internal quotation marks omitted). See also Trans World Airlines Inc. v. Hughes, 449 F.2d 51 (2d Cir.1971). Although a court has discretion to determine whether the facts alleged in a complaint state a valid cause of action, a defaulting party ordinarily cannot contest the merits of the plaintiff's claim absent "indisputable" contradictory evidence. Au Bon Pain, 653 F.2d at 65; Trans World Airlines, 449 F.2d at 63-64. Moreover, a default effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct – that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged. Id. at 69-70. The movant need prove "only that the compensation sought relate to the damages that naturally flow from the injuries pleaded." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 159 (2d Cir. 1992).

In determining damages not susceptible of simple mathematical calculation, Fed. R. Civ. P. 55(b)(2) gives a court the discretion to determine whether an evidentiary hearing is necessary. Action S.A. v. Marc Rich & Co, Inc., 951 F.2d 504, 508 (2d Cir. 1991). As long as there is a "sufficient basis from which to evaluate the fairness" of the sum awarded, a court may rely upon detailed affidavits and documentary evidence to determine damages. Id. By the same token, the moving party bears the burden of providing a reasonable basis for determination of damages and

should not be awarded damages if the evidence is not adequate. Finally, the moving party is entitled to all reasonable inferences from the evidence it offers. Au Bon Pain, 653 F.2d at 65 (citing Trans World Airlines, 308 F. Supp. at 683).

### B. Statutory Damages for Violations of the FCA

Sections 553 and 605 of Title 47 of the United States Code prohibit the unauthorized interception and reception of cable programming services. In the present case, the well-pleaded allegations that Martin engaged in the type of unauthorized conduct prohibited by the FCA are deemed admitted. When a court determines that a defendant has violated both Sections 553 and 605, the aggrieved cable operator may recover damages under only one of those sections. See Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 129 (2d Cir.1996) A plaintiff may elect to recover damages under Section 605 in consideration of its higher damages award. Id. Cablevision has elected to recover statutory damages under Section 605. (See Affidavit of Donald Kempton ("Kempton Aff.") ¶ 31). Section 605(e)(C)(3)(ii) provides that the aggrieved party may recover no less than $1,000 and no more than $10,000 for each violation "as the court considers just." Id. As one would expect, Cablevision requested that it recover the statutory maximum of $10,000.00; Magistrate Judge Orenstein rejected that request.

## II. Discussion and Analysis

### A. Cablevision's Objections to the R&R

Cablevision offers two primary objections. First, it objects to the R&R's recommendation of the minimum statutory damages of $1,000.00 on the grounds that Judge Orenstein improperly recommended the minimum amount to punish Cablevision for seeking the maximum award permitted by the governing statute, i.e. $10,000.00. (See Plaintiff's Objections

3

to the Report & Recommendation ("Pl.'s Objs.") at 2). Second, Cablevision challenges the recommendation that only $228.00 be awarded to cover reasonable attorneys' fees on the grounds that it is contrary to law to deny an award of attorneys' fees solely on the basis that tasks were billed at a pre-arranged flat rate. (See id.).

1. **Statutory Damages**

Cablevision argues that its request for statutory damages in the amount of $10,000.00 was fully supported by its memorandum of law submitted in support of the inquest ("Pl.'s Mem."); that the amount requested was based on the estimated "benefit" to defendant Martin from his use of the illegal device; and that calculating the damages award in this manner, i.e. based on the estimated benefit to the defendant, is consistent with decisions of courts of this district and of the Southern District of New York in analogous Cablevision default judgment matters. (See Pl.'s Objs., at 3-4). Cablevision argues that it therefore should not be penalized for its application foe the maximum statutory award, but rather should be awarded this amount.

Cablevision submitted documentary evidence to support its position on the inquest, namely the affidavit of Cablevision's Manager of Investigations ("Kempton Aff."), and the Affirmation of Melinda Dus, an associate of the law firm that represents Cablevision in this suit. (Affirmation of Melinda M. Dus ("Dus Aff.")). Several exhibits accompanied Dus's Affirmation, consisting of transcripts of the handwritten timesheets prepared by plaintiff's lawyers in connection with the case. Judge Orenstein considered these items and the entire record in formulating his report and recommendation, and I have done the same on this de novo review.

In his R&R, Judge Orenstein correctly noted that under the FCA it is within the court's

4

discretion to award damages in any amount between $1,000.00 and $10,000.00 as it deems just, and that in coming to the appropriate amount, the court should consider the market value of the rights infringed, the revenue lost by the plaintiff, the infringer's state of mind, and deterrence of future infringement. (See R&R, at 4 (citing 47 U.S.C. § 605(e)(3)(C)(i)(II); Kingvision Pay-Per-View Ltd. v. Olivares, No. 02 Civ. 6588, 2004 WL 744226, at *3 (S.D.N.Y. April 5, 2004))). The R&R went on to consider these factors in connection with the premium cable programming and the pay-per-view programming to which Martin gained access through the illegal device he purchased. With respect to the former, Cablevision normally charges approximately $80 per month for premium service, and Martin was paying approximately $50 per month in legitimate cable charges over the relevant thirty month period.[1] Therefore, with regard to the premium programming, Cablevision was damaged by Martin in the amount of approximately $900.00, or $30.00 per month for a period of thirty months.

In addition, Martin gained access to approximately $400.00 per month in pay-per-view broadcasts. (See Kempton Aff. ¶¶ 5, 21-27). In other words, with respect to the pay-per-view programming, Martin could have conceivably watched $400.00 worth of programming during the course of a month if he chose to watch all of the pay-per-view programs offered. Based on the foregoing, Cablevision requested the statutory maximum damage award available – ten thousand dollars - as it estimated damages equal to $430.00 per month for the thirty month period, totaling $12,900.00. (Id. ¶ 21).

The R&R took issue with Cablevision's assertion that it was entitled to $400.00 per

---

[1] The record establishes that the relevant period is from June 2002, when Martin purchased the device, through January 2005, when the complaint in this action was filed.

5

month in damages for Martin's *access* to pay-per-view programming. As Judge Orenstein put it:

"In the absence of any evidence of Martin's actual use of the device, I see no reason to share Cablevision's assumption that Martin made (or allowed someone else to make) the maximum possible use of that access." (R&R, at 5). Based on this conclusion, Judge Orenstein intimated that he would, in the interest solely of deterring future pirating like that undertaken by Martin, recommend a total damages award somewhere in the range of $2,000 to $3,000. (R&R, at 6).[2] He went on to conclude, however, that a competing interest, namely the deterrence of Cablevision's continued attempts to recover the statutory maximum damages award against defaulting defendants, mandated that he decrease the damages award he would otherwise grant Cablevision. (See id.). Judge Orenstein explained:

> But there is another category of conduct that should also be deterred. This case is only the latest in a long string of lawsuits in this district in which this plaintiff (or its corporate predecessors), represented by the same law firm, has advanced precisely the same theory to seek the statutory maximum, only to have the district

---

[2] The $2,000 to 3,000 figure is, at best, an estimate. Judge Orenstein referenced the award granted in the case of DirecTV, Inc. v. Perrier, No. 03-CV-400S, 2004 WL 941641 (W.D.N.Y. March 15, 2004), in which the court granted damages in the amount of $2,850.00. Judge Orenstein's R&R stated:

> If deterring the Martins of the world from using pirate access devices was the only interest at stake here, my analysis would go no farther and I would recommend an award of damages somewhat higher than the minimum amount endorsed in *Perrier*.

(R&R, at 6). In Perrier, however, there were two alleged violations, therefore two $1000.00 minimum statutory awards were granted. Thus, in the present case, Judge Orenstein could have meant by comparison that he would have recommended an award slightly higher than $1850.00 or slightly higher than $2850.00. As I am reviewing the R&R de novo, determining what Judge Orenstein's meant is unnecessary.

court analyze and reject its analysis. My own review of the public docket in this district revealed that Cablevision had (as of the time of that review) filed 164 similar actions just since 2003. Twenty of those cases, including this one, resulted in a notation of default. In the seven default cases (aside from this one) where Cablevision's theory of damages could be readily ascertained from reviewing the public docket, Cablevision unsuccessfully advanced the same theory it makes here to the effect that the defaulting defendant watched the maximum amount of pay-per-view programming available."

(R&R, at 6, n.1 (citing cases)). Reprimanding Cablevision for offering what Judge Orenstein believed to be a meritless argument that $400.00 per month was a reasonable estimation of damages caused, Judge Orenstein recommended the minimum statutory award available of $1,000.00 in damages:

> Unless and until Cablevision pays some price for its apparent unwillingness to accept the consistent rulings of the various judges of this court, it will have no disincentive to continue making its patently unrealistic claims or [sic] damage and imposing needless burdens on the court. Accordingly, I respectfully recommend that the court exercise its discretion to award Cablevision the minimum amount of $1,000.00 in statutory damages.

(R&R, at 8).

Cablevision asserts that Judge Orenstein's "implied assumption" that its request for $10,000.00 in damages was improper and somehow warrants deterrence or punishment is erroneous as a matter of law. This court is inclined to agree. First, I emphasize that it is a difficult task to determine the appropriate damage award under the FCA. The statute itself provides no guidance for courts to decide where in the range of $1,000 to $10,000 the appropriate award lies and in the case of a default judgment there is typically no evidence to establish how much programming was actually watched. Thus, I completely understand Judge Orenstein's frustration with Cablevision in light of the myriad of cases it files under the FCA and for which he and other judges are left with the difficult task of computing damages. As Judge

7

Orenstein opined, it is in the court's and the plaintiff's best interests to have Cablevision offer a *reasonable* average amount that a typical cable user, such as Martin, spends on pay-per-view programming in a given month. To assume that the average person would watch $400 worth of programming per month is unreasonable, and offering such a figure provides little, if any, guidance to judges on inquests in matters such as these.

That being said, Cablevision is unquestionably entitled under the FCA to seek damages up to $10,000.00, see 47 U.S.C. § 605(e)(3)(C)(i)(II), and its decision to do so is not improper if there is a good faith basis to assert that such an amount is reasonable in light of the evidence. Furthermore, I take note of a number of cases cited by Judge Orenstein where Cablevision's request at the inquest stage to recover $400 per month in damages for defendant's illegal access to pay-per-view programming was rejected. (See R&R, at 6, n.1). Judge Orenstein's admonition to Cablevision over requesting such high damages when there is no reasonable basis to do so is well founded. However, Cablevision correctly points out that in none of those decisions was Cablevision punished for having sought the statutory maximum by having its reasonable award decreased to the statutory minimum. (See Pl.'s Objs., at 5-6). Indeed, in these cases, as is true in the vast majority of analogous cases in this district, the damages award granted was based on a reasonable approximation of what the defendant's monthly pay-per-view usage might have been. I am persuaded that it is proper in this case to determine the appropriate statutory damages award based on this model, i.e. by determining a reasonable approximation of typical monthly pay-per-view purchases.

Moreover, I credit Cablevision's explanation as two why it chose in this case to seek the statutory maximum award, or $400 per month in pay-per-view related damages, whereas in other

8

analogous cases, it has sought pay-per-view damages in the much lower range of $50-$75 per month.  Compare, e.g., CSC Holdings v. Bell, 04-CV-5603 (TCP)(ARL), slip op., at 7 (E.D.N.Y. June 28, 2005) (seeking damages of $50 per month in connection with illegal interception of pay-per-view programming, recognizing that it is "unlikely that [the defaulted defendant] watched $400.00 worth of pay-per-view programming per month").  Cablevision explained that in the cases cited where it had requested only $50 or $75 for monthly estimated pay-per-view usage, it did so because in those cases, "the particular magistrate judge handling the matter had already ruled on the specific methodology that he or she would utilize to determine the amount of statutory damages." (Pl.'s Objs., at 6).  Thus, in each of those cases, the magistrate judge assigned had previously issued a report and recommendation following an inquest wherein he/she recommended between $50 and $75 per month in estimated pay-per-view damages.  (See id.).  In the present matter, however, Cablevision did not have insight as to the methodology Judge Orenstein would use as there was no published R&R in an analogous case by Judge Orenstein on which to rely.  I find Cablevision's explanation credible, and, moreover, I find that Cablevision did not act improperly in requesting $400 per month in pay-per-view damages and should not be punished for doing so.

I am therefore left with the task of determining the appropriate amount of statutory damages to be awarded to Cablevision as a result of the default judgment entered against Martin. I will attempt to reasonably approximate the benefit Martin enjoyed as a result of his illegal conduct.  Here, although Martin may have had access to $400 per month worth of pay-per-view programming, it is patently unreasonable to presume that he would have watched that much television.  The available pay-per-view programming ranges in price from approximately $3.95

to $54.95 per selection. (Kempton Aff. ¶ 5). It is reasonable for the court to assume that Martin watched a limited number of both high and low costs programs each month. See, e.g., CSC Holdings v. Khrisat, No. 04-CV-8592, 2005 WL 3030838, at *4 (S.D.N.Y. Nov. 8, 2005) (Report and Recommendation of Ellis, Mag. J.) (adopted by J. Sand on Jan. 18, 2006) (assessing damages for ten to twelve movies at $5 each and one premium event at $55 per month); Cablevision Sys. N.Y.C.Corp. v. Collins, No. 01-CV-10954, 2004 WL 1490307, at *5 (S.D.N.Y. June 29, 2004) (Report and Recommendation of Mass, Mag. J.) (adopted by J. Owen on Nov. 14, 2005) (assessing damages for three low cost programs at $4.50 each and one high cost program at $49.95 per month).

In line with the cases cited above and others, I will presume that Martin watched approximately $50 worth of pay-per-view programming each month, be it in the form of several low-cost movies or one high cost television program. As stated earlier, Cablevision was also damaged by Martin's premium cable usage in the amount of $30 per month. Thus the total statutory damages will be $80 per month for the thirty month period, for a total award of statutory damages in the amount of $2,400.00.

Judge Orenstein's recommendation of $1,000.00 in statutory damages is hereby modified so as to award Cablevision statutory damages in the amount of $2,400.00.

### 2. Attorneys' Fees for Flat-Rate Billing

I turn now to Cablevision's objections to the R&R's recommendation to award $228.00 in attorneys' fees. Cablevision, in its submissions on the inquest, requested an award of

attorneys' fees in the approximate amount of $1,328.00.[3]

Reasonable attorneys' fees are recoverable under the FCA. See 47 U.S.C. § 605(e)(3)(B)(iii). In fact, the statutory language suggests that recovery of reasonable attorneys' fees is mandatory: "the court . . . *shall* direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." Id. (emphasis added). Under prevailing Second Circuit law, a request for attorneys' fees must be supported by contemporaneous time records that specify "for each attorney, the date, the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983) ("contemporaneous time records are a prerequisite for attorney's fees in this Circuit").

Evidence in the record establishes that Cablevision and its attorneys had an agreement in place pursuant to which flat rates would be paid for certain litigation tasks independent of the time spent on the tasks. Specifically, they agreed that the attorneys will charge Cablevision the following on a per-task basis: $300 for drafting all papers relating to the complaint; $200 for drafting all papers relating to a default; and $600 for drafting all papers relating to the damages submission for inquest. (Dus Aff. ¶ 5). In accordance with this arrangement, on the billing form sent to the client that reflects the time records of the attorneys, there is a notation that 0.00 hours was spent on the flat rate tasks. (Id., Dus Aff. Exs. D-F). Thus, the contemporaneous time records submitted by Cablevision in support of reasonable attorneys' fees award indicate that on specific dates attorney William E Primavera spent 0.0 hours "review[ing] file and draft[ing ]

---

[3] The R&R recommended that Cablevision be awarded $289.00 in costs, which is not challenged by the plaintiff. This recommendation is adopted as is it supported by the record.

complaint," and that paralegal assistant Susan A. Weindler spent 0.00 hours "draft[ing] plaintiff's default papers" and 0.00 hours "draft[ing] plaintiff's inquest papers." (Dus Aff. Ex. D-F).[4] For these tasks, Cablevision was charged a total of $1,100.00 that Judge Orenstein refused to award.

Judge Orenstein's primary basis for denying recovery of the $1,100.00 in flat rate attorneys' fees was his finding that Cablevision failed to satisfy the requirements of Carey in connection with these tasks in that it did not provide contemporaneous records detailing the hours expended and the specific nature of the work done. (See R&R, at 9). Judge Orenstein stated that "[i]f the papers served in this case were in any meaningful sense the product of original legal work," then Cablevision would likely have been able to satisfy Carey. (Id.). He reasoned that because Cablevision's attorneys file "boilerplate," "cookie-cutter" papers in countless factually analogous cases, their flat rate fees are unreasonable – indeed perhaps even unethical – because so little, if any, actual work goes into creating them. (See R&R, at 10-12). The R&R concluded:

> Requiring a defaulting defendant to reimburse the company for the fees associated with "drafting" such boilerplate submissions would be unjust.
>
>            \*      \*      \*
>
> By virtue of the fee-shifting provision and the way Cablevision and their counsel have acted, defaulting defendants end up paying over a thousand dollars apiece for "legal work" that represents little if anything more than inserting the next name, relevant dates, and the facts relating to how Cablevision obtained the database of pirate box purchasers into pre-existing pleadings and motion papers.

---

[4] Cablevision does not object to the R&R inasmuch as it awarded reasonable attorneys' fees for non-flat rate billed tasks performed by paralegal Weindler, i.e. Weindler's 2.4 hours of work charged at a rate of $95 per hour, for a total of $228 in attorneys' fees. This award is adopted as it is sufficiently supported by the record.

*   *   *

> By shifting such fees to absent defendants, Cablevision has no incentive to insist that the law firm charge a reasonable fee for its minimal work in litigating these default cases.

(R&R, at 10-11). Based on this reasoning, Judge Orenstein recommended that there be no reimbursement to plaintiff for the flat rate tasks.

Cablevision objects to this recommendation and has supplied additional evidence to support its objections, namely the Affirmation of Wayne R. Louis, an attorney employed by the firm that represents Cablevision in this and all of its FCA suits ("Louis Aff."), and two articles which discuss the growing legal trend in billing flat rates for certain tasks as opposed to hourly billing. With respect to the latter, the court notes for the record that it is familiar with the pros and cons of both the flat rate and billable hour systems.

Cablevision's objections are twofold. First, it objects to Judge Orenstein's insinuation that nefarious motives underlie the flat rate agreement, and argues that this conclusion is based on incomplete data and incorrect assumptions. (See Pl.'s Objs., at 11-14). Second, Cablevision challenges Judge Orenstein's conclusion that the flat rate arrangement results in excessive charges given the time and effort which goes into the tasks. (See Pl.'s Objs., at 14-18).

Relying on the Affirmation of Wayne Louis, Cablevision maintains that the conclusion that flat-rate billing is utilized so that Cablevision can reap a benefit is belied by the facts. Cablevision is charged the same flat fee for the drafting of every complaint completed by its attorneys, and in every instance Cablevision pays that fee, whether the defendant ultimately defaults, the case is settled or dismissed, or the matter proceeds to litigation. (Louis Aff. ¶ 9). Thus, Cablevision argues that it "bears the brunt" of the legal fees and does not shift that burden

to defaulting defendants, but rather only tries to properly recover its fees pursuant to the FCA. (Pl.'s Objs., at 12). Next, Cablevision suggests that for it to acquire a financial windfall as a result of high fixed fees, there would need to be a high default rate in the FCA cases it pursues. However, as Judge Orenstein's R&R pointed out, in the 164 similar actions filed in the Eastern District of New York since 2003, only twenty of those (including the instant matter) have resulted in default, constituting 12.2% of cases filed. Thus, Cablevision argues, "it is contrary to common sense to assume, as the R&R does, that Cablevision and its counsel would have structured a billing arrangement that would only benefit Cablevision in 12.2% of the cases it filed, and that would work to its detriment in the other 88% of cases." (Pl.'s Objs., at 13).

Next, Cablevision informs the court that the R&R incorrectly assumes that default judgments are "quickly, easily, and profitably collectible." (Id.). According to Louis, "default judgments obtained in residential cable theft cases are more often than not uncollectible in whole or in part." (Louis Aff. ¶ 7). Thus, Cablevision argues, the assumption that securing default judgments enables Cablevision to obtain free legal services or to generate profit is unfounded. (See Pl.'s Objs., at 13). Finally, Cablevision challenges the R&R's assumption that it agreed to flat rate billing only for tasks performed in the default judgment context. Judge Orenstein stated in the R&R that "it seems clear that Cablevision does not bear the brunt of this unreasonable system: of the three tasks it has agreed to pay for at a flat rate – the complaint, a default motion, and a damages submission – two (billed at a total of $800) are of a type that are only likely to be paid by a defaulting defendant." (R&R, at 11). Louis attests, in opposition, that there are several other tasks – tasks that do not arise in the default context – for which Cablevision and its counsel have agreed to flat rate billing. These additional tasks charged at a flat rate include the

following: drafting mandatory disclosures pursuant to Fed. R. Civ. P. 26; drafting initial discovery requests such as interrogatories, requests for admission, and document requests; drafting settlement documents; and certifying and serving copies of settlement documents and related correspondence upon defendants. (Louis Aff. ¶ 11). Cablevision argues that this fact further supports the conclusion that the flat rate billing scheme is not intended to shift the burden of paying legal fees to the cable theft defaulting defendant. (Pl.'s Objs., at 14). Moreover, Louis declares in his affirmation that "from the time Cablevision and this firm first agreed to the task-billing arrangement in 2000 to the present, the concept of reaping a profit from default judgment cases was never discussed, directly or indirectly, by Cablevision or its counsel, and never entered into any negotiations regarding the matter." (Louis Aff. ¶ 8).

Cablevision's second primary objection to the R&R is that it incorrectly presumes that the flat rate fees charged for the default-related tasks are excessive. Conceding that the descriptions of services performed provided in the inquest submission may have been "overly succinct," Cablevision argues that the work performed for the flat rate is "far more than meets the eye." (Pl.'s Objs., at 15).

With respect to the $300 charge for drafting the complaint, the record indicates that the task performed was "reviewed file and drafted complaint." (See Dus. Aff. Ex. D). Cablevision has persuasively argued that it is not unreasonable or excessive to charge $300 for this work. As Louis attests, reviewing the file and drafting the complaint in a case such as this involves a number of tasks, not just "drafting" the complaint from a template. The review typically includes the following: review of the decoder purchase and shipment evidence, review of the customer's cable television subscription history, review of the record of prior communications by

Cablevision or its counsel to resolve the dispute pre-litigation, occasional discussion with Cablevision over whether pursuing the action is appropriate, and perhaps settlement discussions with the defendant in the first 45 days after initiating the lawsuit. (Louis Aff. ¶ 13). Attorney William Primavera performed these duties in connection with the $300 complaint drafting charge. His hourly billable rate is $145 (see Dus Aff. ¶ 3), so the charge corresponds to approximately two hours of Primavera's work. It is neither unreasonable nor excessive to presume that Primavera might have spent two hours "drafting the complaint," given the evidence (which notably was not presented to Judge Orenstein) that more accurately describes the specific tasks likely performed by Primavera in conjunction with that fee. Cablevision has supported the request adequately under Carey by detailing the date the work was performed, the attorney who performed it, and the nature of the tasks. Thus, I will modify the R&R to the extent that Cablevision will be awarded $300 in attorneys' fees for the complaint drafting.

With respect to the $200 flat rate charge for drafting plaintiff's default papers and the $600 flat rate charge for drafting plaintiff's inquest papers, I am in agreement with Judge Orenstein that an award of attorneys' fees in this amount is not supported by the record. These tasks were performed by paralegal assistant Susan Weindler, whose billable rate is $95.00 per hour, thus such an award is unreasonable unless it is conceivable that Weindler spent approximately 8 hours combined in these tasks and that the record supports as much. In contrast to its explanation of the specific tasks which underlie the "drafting of complaint" task, Cablevision has not provided more detailed information as to the specific nature of the tasks performed in connection with the $800 charge. Like Judge Orenstein, I am presented only with the time-sheet record, which indicates that Weindler "drafted plaintiff's default papers" and

16

"drafted plaintiff's inquest papers" with no indication of the time spent doing so and no further explanation of the tasks performed such that I could reasonable estimate the time expended. Thus, Cablevision is not entitled to this $800 in flat rate attorneys' fees, and I adopt Judge Orenstein's R&R to the extent that he rejected that request. See Collins, 2004 WL 1490307, at *6 ("Cablevision is not entitled to be compensated for its lawyer's flat-rate billing."); Cablevision Systems New York City Corp. v. Santiago, No. 02-CV-322, 2003 WL 1882254, at *7 (S.D.N.Y.2003) (R&R of Freeman, Mag. J.) (adopted by J. Cote on Apr. 11, 2003) ("Many of those time sheets, however, do not reflect the hours actually expended on the matter. As such, those time sheets do not comport with the requirements of Carey, and any fees claimed based on them should not be allowed.").

Cablevision suggests that precedent which holds that flat rate fees are not recoverable under Carey has been undermined by a recent Southern District decision, CSC Holdings, Inc. v. Khrisat, No. 04-CV-8592, 2005 WL 3030838 (S.D.N.Y. Nov. 8, 2005) (Ellis, Mag. J.). In Khristat, Magistrate Judge Ellis, recognizing the line of cases in the Southern District that "disallow[ ] recovery of pre-arranged flat fees," recommended that such fees be awarded. He explained that because the time records submitted sufficiently detailed the tasks noted, the date upon which the tasks were performed, and the nature of the tasks performed, the court was able "to make an assessment of a reasonable lodestar amount." Khristat, 2005 WL 3030838, at *5. Thus, in that case, the court found "the pre-arranged flat rates [ ] reasonable for the tasks performed" and supported by detailed documentation. Id.

I am not persuaded to follow Khristat in the present case, primarily for the reasons offered by Judge Orenstein in his R&R. Given that Cablevision's attorney files countless suits analogous

17

to this one and files essentially the same documentation in support of motion for default judgment and its inquest on damages in many of them (see R&R, at 10 (citing cases)), I cannot find that the $800 in flat rate fees for drafting the default and damages papers is reasonable. On the record before me, I cannot conclude that a paralegal would have expended approximately eight hours on these tasks. Since Cablevision has failed to meet the Carey requirements in requesting recovery of this $800, that request for attorneys' fees is denied.

In sum, although I share in Judge Orenstein's sentiments and the concerns he expressed, I hereby modify his R&R to the extent that he recommended an award of $228.00 in attorneys' fees. Cablevision will be awarded $228.00, representing hourly billable work performed, and an additional $300 in attorneys' fees, representing time expended in reviewing the file and drafting the complaint. Thus, Cablevision's attorneys' fees award totals $528.00.

**IV.     Conclusion**

For the reasons set forth above, the R&R of Magistrate Judge Orenstein is adopted in part and rejected in part. I hereby modify the R&R to the following extent:

Cablevision will be awarded **$2,400.00** in statutory damages under the FCA

Cablevision will be awarded **$528.00** in attorneys' fees, and

Cablevision will be awarded **$289.00** in costs

The Clerk of the Court is therefore directed to enter a default judgment award to plaintiff Cablevision in the amount of **$3,217.00.** The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: March 27, 2006                                 /s/
      Brooklyn, N.Y.                               Nicholas G. Garaufis
                                                        United States District Judge